**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SANJUANITA SEPULVEDA; ANGELA
SALINAS; JOSE SANCHEZ RIVERA,
individually and on behalf of all
similarly situated; DAVID BAILEY;
SEAN BRADHAM; CLARA BENNETT;
VICTOR BURGOS RIVERA; VENCE
BYRD; HADA CARDENAS; ANGEL
COLMENARES; YACHIRA DAVILA;
HECTOR ESMURRIA; GARVINA GIBBS;
MARGARET GIBBS; ROGER
GONZALES; PATRICIA GUTIERREZ;
SELENA HANCOCK; CESAR
HERNANDEZ; PATTIE HINTON;
WILLIAM JACKSON; THOMAS JACOBS;
ROBIN LOTT; MARICRUZ LUYANDO;
MARIA MEJIA; LARRY MILLER;
JOANA NIEVES; KECLAINE NORMIL;
SERGE NORMIL; KENNY ORTIZ; ADA
ROSA BATIZ ORTIZ; ANGEL PEREZ;
MARIANO PEREZ; TROY PHILLIPS;
SONIA CORTES PICART; ELOINA
RAMIREZ; MANUEL RAMIREZ; JESSICA
RENTAS; GLORIMAR RIVERA;
MYRIAM RIVERA; ALEJANDRO
ESCALANTE ROBLERO; JOSE
SANCHEZ; ALAN SAVAGE; PEDRO
BARRETO TIADO; MARIA DEL
TORRES CARMEN; ASUNCION TORRE;

No. 08-2256

CORTEZ TRUITT; JOSE VALENTIN;
MONSERRATE VELEZ; ROLAND
WOODS; NORA L. ALVARADO; LUIS
RIVERA FLECHA; ALEJANDRO TZUM
VICENTE; IVONNE GONZALEZ;
MIGUEL MARTIN LEON; OLGA
MALPICA; FRANCISCA PEREZ; JOSE
RICO; EVELYN TRINIDAD LIERAS;
MARIZOL ZAYA JIMENEZ; JOSE J.
CASTRO; DIANIRA COTTO DIAZ; ENIS
DALISJO VALLES; MOISES FLORES
CARBONELL; EMELDA GOMEZ;
JOHNNY LUPO LEON; SERAFIN
MORALES; FELIX QUINTANA
MALDONADO; ESSAU RIVERA; ALEXIS
ALAMEDA; ESPERANZA ALVAREZ;
LORY ALVINO-LOPEZ; RAMON CRUZ
SERGES; JOHNNY HUERTAS; EDGARDO
JIMENEZ MOLINA; FERNANDO
NATARENO; ALICIA ORTIZ SANCHEZ;
JULIO REYES PEREZ; ALBERT TORRES
MORALES; HECTOR S. VELASQUEZ;
JENNIFER VALENTIN VELEZ; CARMEN
ACEVEDO; CELINES LOPEZ
CARMONA; ROBERTA MARTINEZ;
ELIZABETH MEDELLIN; KEILA
MONTANEZ SANTOS; YESENIA VEGA;
GLADYS ARROYO; KARINA BELASKES
PIRIS; JOSE O. GARCIA; SUZETTE
GARCIA BARBOSA; SANTOS GRAMAJO
MAZARIEGOS; MICHAEL GUERENA
PAGAN; MANUEL J. HERNANDEZ;
GLORIA KIDWELL; VERONICA S.

LUGO; JORGE E. MEDINA GONZALEZ; PEDRO C. NIEVES; RODOLFO RAMIREZ LOPEZ; JUDY C. RAMOS; WILFREDO J. RODRIGUEZ; JOSE LUIZ SANCHEZ; HARRY SANTIAGO; REBERT AMISIAL; ROSITA AMISIAL; KENNETH A. ARMSTRONG; DAVID W. BADGER; DOROTHY M. BAILEY; FILOMENA BARTOLON; MARTHA BELL; MARIA BERDUO; GALEN BYERLY; DIEUNATHAN CUSTIN; HECTOR COLON CLASS; JAIRO CORADO; ALLISON M. DAVIS; LIONEL BUENO; MIMOSE DELIUS; MARILITZA FERRER-FIGUEROA; GERALDINE FOREMAN; CHARLES D. FREEMAN; VIRGINIA GAONA; BURNELL GIBBS; ELIZABETH GONZALEZ-COLON; ABILIO HERNANDEZ; ALEJANDRA HIDALGO; KATHY D. HOUCHENS; LOLA M. JACKSON; ARTHUR JOHNSON; MARVIN KEATON; MARIA A. LAGUNAS; SHEILA J. LOPEZ; TITO LOPEZ; WANDA IVETTE LUCIANO SOLIS; LEROY MANN, SR.; JEAN MARCELIN; MARCELINA L. MARIOT; LORRAINE MILES; SAMANTHA MIRELES; EDUARDO MORALES; NANCY ORTIZ NIEVES; LAINYA NOEL; HERIBERTO C. OLIVO; MARILYN ORTIZ RODRIGUEZ; SHARON N. ORTIZ; LARRY D. PARKER; YAHAIRA PAGAN; VAINQUEUR PAUL; METELLUS PIERRE-LOUIS; GLADYS E.

Ramos; Luz N. Ramos Ortiz;
Ivonia Raymond; Alexander J.
Richardson; Jean Riche; Lula
Riddick; Walter Rivera Rosa;
Christine Roundtree; Rafael R.
Santiago; Pelizia Satirin; Elaine
Sheppard; Saida Soto; Esther Re
Sutton; Charlie Thomas;
Jonathan Torres Figueroa;
Matthew D. Trago; Silvia
Truitt; Jackie D. Tull; Mario
Velasquez; Roberto Velasquez
Figueroa; Lucien Vernet;
Elizabeth Vitela; Alex
Washington; Ruth Ann White;
Gary D. Williams; Linda Woods;
Eliot Yase Velez; Yahaira
Navarro Gonzales; Lidia Nunez
Rodriguez; Juan Rodriguez;
Gladys M. Stephens; Aida N.
Texeira Melendez; Freddie A.
Torres; Jimmie Torres Rivera;
Jonathan D. Travies; Ceferino J.
Vasquez; Brian Williams;
Agapito Alvarado; Laura
Ascencio; Clinton A. Beckett;
Edwin Borrero; Jose Caballero;
Christian Cajigas;

ANDREA CARTER; GLORIA
CASTANEDA; JACOB CEUS; EDUARDO
COLON RIVERA; YAJAIRA CRUZ;
LUCY CRUZ HIRALDO; THOMAS
DANIELS; LIANETTE DE JESUS;
JANNIE M. EVANS; CHARITABLE
EXANTUS; WANDA FERNANDEZ;
FRANCISCO R. FERRER; LEFILS
FLORES; MARCELLUS M. FOOKS; ELI
S. GARCIA; MANUEL GAUCIN;
ROBERT GEDEON; ANNIE GEORGE;
NORMA I. GIRALD; JAMES A.
GREEN; ANNETTE GUSTIN;
JACQUELINE GUSTIN; HAROLD A.
HARRIS; JEAN A. LARKIN; KEITH P.
LOFLAND; ESTEL MAXION; ARACELI
MEDELLIN; DONNEIL MARK
MURRAY; RAMON OLIVA; MARTA
ORTIZ; FLORA ORTIZ MORALES;
ANGEL LUIS PEREZ; ARCHIBALD
PIERRE; ODETTE PIERRE; CHARLES L.
PINDER; JACQUELINE REGUSME;
GLECERIA V. REYES; ROBERTO
DENNIS RIVERA; RAUL M.
RODRIGUEZ; WANDA RODRIGUEZ;
JAHAIRA RODRIGUEZ CONDE; SAMUEL
ROQUE-RAMOS; SAMUEL ROQUE-
RAMOS; MARCOS A. SANTIAGO;

BRENDA SHIELDS; WILLIAM HENRY
TEAGLE; WILLMARI TORRES REYES;
HAMARA VAZQUEZ; ELIMAS
VELASQUEZ; JULIO M. VELASQUEZ;
WILLIAM L. BAGWELL, JR.;
SHARLENE DIAL; JEFFREY HANCOCK;
LAVERNE HARRIS; HARRY A. ORTIZ;
JOSE RAMIREZ; CRISTINA RODRIGUEZ;
CARL STALLINGS,
          *Plaintiffs-Appellants,*

              v.

ALLEN FAMILY FOODS,
INCORPORATED,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(1:07-cv-00097-MJG)

Argued: October 28, 2009

Decided: December 29, 2009

Before WILKINSON and NIEMEYER, Circuit Judges,
and Anthony J. TRENGA, United States District Judge for
the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Niemeyer and Judge Trenga joined.

**COUNSEL**

**ARGUED**: C. Christopher Brown, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellants. Arthur Mortimer Brewer, SHAWE & ROSENTHAL, LLP, Baltimore, Maryland, for Appellee. **ON BRIEF:** Jane R. Flanagan, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellants. Eric Hemmendinger, Teresa D. Teare, SHAWE & ROSENTHAL, LLP, Baltimore, Maryland, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

Under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (2006), employers and unions may agree through collective bargaining to exclude "any time spent in changing clothes . . . at the beginning or end of each workday" from compensable work time. § 203(o). In this case, we are asked to determine whether the donning and doffing of protective gear at a poultry processing plant constitutes "changing clothes" within the meaning of Section 203(o). We conclude that it does. Consequently, the employer and union here may—as they currently have—exclude donning and doffing from compensable work time.

Our holding, of course, does not mean that employees should not be paid for time spent donning and doffing protective gear. Instead, it simply recognizes that the purpose of Section 203(o) is to leave this issue to the collective-bargaining process. Employers and unions are free to determine for themselves how much compensable time should be allocated and for what activities of "changing clothes." This sort of fact-intensive determination has classically been grist for the mill of collective bargaining, and Congress ensured

that employers and unions could keep it that way by enacting Section 203(o).

## I.

Allen Family Foods, Inc. ("the company") is engaged in the business of processing poultry. It operates several plants, including one in Harbeson, Delaware that employs approximately 1,200 people. A production line conveys poultry through this plant for processing and then packaging for eventual distribution.

The employees who work on the production line are required to wear the following items: (1) safety, steel-toe shoes, (2) a United States Department of Agriculture (USDA) required smock, (3) a USDA required plastic apron, (4) safety glasses, (5) ear plugs, (6) a bump cap, (7) a hair net, (8) USDA required rubber gloves, (9) sleeves, and (10) arm shields. The company commonly refers to these items as either "protective gear" or "personal protective equipment."

At the beginning of each workday, production employees must don these items. They typically do so in the plant's locker room or as they walk from the locker room to the production area. Once they enter that area, they sanitize their gear by dipping their gloves into a tank, splashing the liquid solution onto their aprons, and stepping through a footbath. Afterward, they take their places along the production line and begin the task of processing poultry.

Each day, the employees receive a thirty-minute lunch break, during which no chickens are placed on the production line. Employees are free to leave the production area when the last chicken passes their stations but are expected to be back when the first new chicken arrives. During the lunch break, they typically take off their gloves and aprons, wash up, and then walk to the cafeteria. Upon returning to the production area, they put these items back on and then sanitize them

before resuming work. At the end of each workday, the employees are not required to go through a particular routine. But they typically rinse and doff their gear before leaving the plant.

The company has a long-standing practice of paying these employees on the basis of "line time." That is, it pays them for time spent processing chickens on the production line; it does not pay them for time spent donning and doffing protective gear, walking to and from the production area, or washing their gear before or after work. Employees also do not receive compensation during the lunch break.

Donning and doffing time has been the subject of collective bargaining at the Harbeson plant. In 2002, United Food and Commercial Workers Local 27, which represents most of the production employees at the plant, proposed that its members be paid for twelve minutes of donning and doffing time per day. The company and the union did not agree to that proposal, however.

In January 2007, three production employees filed a collective action against the company under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"). They were joined by approximately 250 current and former production workers who opted in to the action (collectively "the employees"). The employees claimed, among other things, that the company had violated the FLSA by not compensating them for time spent donning and doffing their protective gear.

After discovery, the company moved for summary judgment. Its primary argument was that its pay practices were permissible under 29 U.S.C. § 203(o) of the FLSA, which allows employers and unions to exclude "any time spent in changing clothes . . . at the beginning or end of each workday" from compensable work time. In response, the employees sought, by cross motion for partial summary judgment, a holding that Section 203(o) did not bar their suit. The main

issue of contention was whether donning and doffing protective gear constituted "changing clothes" within the meaning of the section.

Adopting the Eleventh Circuit's analysis in *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007), *cert. denied*, 128 S. Ct. 2902 (2008), the district court held that the donning and doffing of the protective gear was "changing clothes." Accordingly, it entered summary judgment for the company. The employees now appeal.

## II.

We begin with a brief overview of the relevant statutory provisions. The FLSA guarantees covered employees a minimum hourly wage for their work and entitles them to one and one-half times their regular wage for overtime. 29 U.S.C. §§ 206, 207. A recurrent question under the Act has been when the compensable workday begins and ends. The question often arises where, as here, employees perform some tasks before productive work begins.

The FLSA does not define "work" or "workweek." But two statutory provisions do bear directly on the question of when the compensable workday begins. The first is Section 254 of the Portal-to-Portal Act, 29 U.S.C. §§ 251-62, which amends the FLSA. It provides, among other things, that employers are not required to pay their employees for "activities which are preliminary to or postliminary to" the principal activities for which they are employed, unless the employer agrees to do so. § 254(a)(2),(b). Under this provision, activities like changing clothes and washing which are performed before or after the regular work shift are "ordinarily" considered preliminary or postliminary activities and are therefore "excluded from compensable work time" by default. *Steiner v. Mitchell*, 350 U.S. 247, 249 (1956). Changing clothes and washing are not so excluded, however, if they are "an integral and indispensible part" of an employee's principal activities. *Id.* at 256.

The second is Section 203(o) of the FLSA. This section provides:

> Hours Worked.—In determining for the purposes of [the minimum wage and overtime provisions] of this title the hours for which an employee is employed, *there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday* which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o) (emphasis added).

While these two provisions both bear on whether changing clothes and washing count as part of the compensable workday, they operate in different yet interrelated ways. As the Supreme Court has noted, Section 203(o)'s "clear implication is that clothes changing and washing, which are otherwise a part of the principal activity [under the Portal-to-Portal Act], may be expressly excluded from coverage by agreement." *Steiner*, 546 U.S. at 255. That is, even if changing clothes and washing are "integral and indispensible" and therefore not excluded from work time by default under the Portal-to-Portal Act, an employer and union may nonetheless "opt out" by excluding such time under their collective-bargaining agreement. *See Livadas v. Bradshaw*, 512 U.S. 107, 131 (1994) (describing Section 203(o) as an "opt out" provision).

In this case, either provision could potentially exclude the time that the employees spend donning and doffing. It is an open question in this circuit whether donning and doffing protective gear is a preliminary or postliminary activity or "integral and indispensible" to the principal activity of poultry processing. If it is the former, then time spent on the activity is excluded by default under the Portal-to-Portal Act. The dis-

trict court did not reach that question, however, and we need not do so here. For whatever the applicability of the Portal-to-Portal Act exclusion, the time spent on these activities may be excluded from the compensable workday if Section 203(o) applies.

Section 203(o) applies to donning and doffing of protective gear at the beginning and end of each day if two conditions are met. First, these activities must constitute "changing clothes" within the meaning of the statute. Second, time spent on these activities must be excluded from the workday by the express terms of or the customs and practices under a bona fide collective bargaining agreement.

The employees concede the existence of such a custom or practice and for good reason. *See* Br. of Appellants at 8 n.2 ("Plaintiffs do not contest the 'custom or practice' part of the exclusion."). The company's practice of paying the employees on a "line time" basis is long-standing. While one of the unions at the plant proposed adding donning and doffing time, this proposal was never agreed upon, and the custom or practice remains in place.

The question presented in this case, therefore, is whether donning and doffing protective gear counts as "changing clothes." If so, then time spent on these activities is not compensable under the FLSA.

III.

The employees argue that Section 203(o) does not apply for two main reasons: the items at issue are not "clothes," and the act of donning and doffing them is not "changing." We disagree on both points. In our view, Section 203(o) was intended to leave the compensability of this very sort of activity to the collective-bargaining process.

A.

"We begin, as always, with the text of the statute." *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007). The statute does not define the phrase "changing clothes." Accordingly, we apply the "fundamental canon of statutory construction" that "words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).[1]

We first turn to the plain meaning of the word "clothes." A leading dictionary defines "clothes" as "clothing," which in turn is defined as "covering for the human body or garments in general: all the garments and accessories worn by a person at any one time." Webster's Third New International Dictionary 428 (unabridged) (1986) [hereinafter Webster's]. Like the Fifth and Eleventh Circuits, we conclude that this definition is "consistent with the common understanding of the word." *Anderson*, 488 F.3d at 955; *see also Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 n.3 (5th Cir. 2001) (adopting this definition). This definition certainly encompasses the items which are at issue here. All the required items serve as "covering." The shoes, smocks, aprons, gloves, and sleeves easily qualify as "garments," while the bump caps, ear plugs, hairnets, arm shields, and glasses fall comfortably within the category of "accessories."

---

[1] The employees urge us to construe Section 203(o) narrowly in order to effectuate the remedial purposes of the FLSA. As they acknowledge, however, not all courts have applied this standard of interpretation to Section 203(o) because the section simply defines "Hours Worked" rather than exempting entire categories of employees from FLSA's protection. *Compare Anderson*, 488 F.3d at 957 (declining to apply the standard), *with Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 (9th Cir. 2003) (applying the standard). We need not enter this debate. Even if this standard of interpretation applies, we still must "giv[e] due regard to the plain meaning of statutory language and the intent of Congress." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).

The employees argue that the "plain text" of the statute "does not permit" this interpretation. Br. of Appellants at 15. In their view, "clothes" encompasses only "regular undergarments and outerwear" of the sort "that one would wear on the street." *Id.* at 15, 17. While this definition might embrace standard company uniforms, their argument goes, it excludes items worn for protection from hazards in the workplace. We find this cramped interpretation of the term "clothes" unpersuasive for two main reasons.

First of all, we fail to see why the term "clothes" would refer to only "ordinary" or "street clothes." *Id.* at 15, 16. The statute does not use such qualifying adjectives; nor shall we. The statute explicitly refers to "changing clothes . . . at the beginning or end of each *workday*." § 203(o) (emphasis added). It is obvious from both the language and the subject matter of the statute that Congress was talking about work clothes and not, say, just street clothes or pajamas. The statute encompasses precisely the sort of clothes that people wear to, at, or from work, which are often quite different from the sort that people wear on their own time.

Second, "we see no need to distinguish uniforms from protective clothes." *Anderson*, 488 F.3d at 955. Clothes commonly protect the people who wear them, either from weather conditions or physical hazards, and the fact they are worn for that very purpose does not mean that they cease to be clothes. "A cloth jumpsuit, for instance, is probably clothing even if worn by a car mechanic as protection from oil and grease." *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1067 (D. Minn. 2007). Likewise, a steel-toe boot is clothing even if worn as protection from hazards on the factory floor. We fail to see, therefore, how protective clothing is somehow not clothing. This fact is illustrated by federal regulations which the employees themselves cite in support of their position. Br. of Appellants at 20 n.5. The Occupational Safety and Health Administration, for example, defines "personal protective equipment" as "specialized *clothing* or equipment worn by an

employee for protection against a hazard." 29 C.F.R. § 1910.1030(b) (emphasis added).

Section 203(o) makes no distinction between protective and non-protective clothes. That provision "simply uses the term 'clothes,' which would seem to indicate that it includes all clothing, including that which also constitutes personal protective equipment." *Figas v. Horsehead Corp.*, No. 06-1344, 2008 WL 4170043, at *10 (W.D. Pa. Sept. 3, 2008) (emphasis omitted). Because many work clothes are protective to some extent, the distinction urged upon us by the employees would be difficult, if not impossible, for courts to administer in a consistent and coherent manner. As counsel for the employees acknowledged at oral argument, the steel-toe shoes at issue here could be reasonably classified as either "normal" clothes or "protective gear." So too could the aprons, smocks, or rubber gloves. These are but a few examples of the many difficult determinations that courts would be required to make were we to adopt the employees' piece-by-piece approach to clothing.

This case, by contrast, involves a straightforward application of the statutory text. It concerns what other courts have described as "standard safety equipment." *See Reich v. IBP, Inc.*, 38 F.3d 1123, 1125-26 (10th Cir. 1994).[2] Like the Elev-

---

[2]The employees rely heavily on the Ninth Circuit's decision in *Alvarez*, which holds that the protective items worn in the beef and pork industries are not "clothes" within the meaning of Section 203(o). 339 F.3d at 904-05, *aff'd on other grounds*, 546 U.S. 21 (2005). We need not adopt either the Ninth Circuit's holding or rationale to note that appellants' reliance is misplaced. In *Alvarez*, the Ninth Circuit distinguished between "non-unique gear" such as hardhats and safety goggles and "unique gear" such as metal-mesh leggings and Kevlar gloves. *Id.* at 903. With respect to the non-unique items, it held that time spent donning and doffing was "non-compensable as *de minimis*." *Id.* at 904. Thus, if the items in this case qualify as non-unique (which they certainly do), then the Ninth Circuit reaches the conclusion that the employees are not entitled to compensation, albeit for a different reason.

enth Circuit, we conclude that these items "fit squarely" within the definition of "clothes." *Anderson*, 488 F.3d at 956.**³**

We now turn to the plain meaning of the term "changing." To "change" means "to make different," that is "to modify in some particular way but short of conversion to something else." Webster's 373; *see Anderson*, 488 F.3d at 956 (adopting this definition). The employees contend, however, that the term "changing" requires the exchange or substitution of one item for another. In their view, simply layering protective gear on top of one's clothes does not count as "changing."

We reject this narrow definition. "Nothing in the statute's language suggests that its application turns on whether one must fully disrobe or exchange one shirt, for example, for another." *Id.* at 956. And it would make little sense for the statute to impose such a requirement. If it did, compensation for putting on a company-issued shirt might turn on something as trivial as whether the employee did or did not take off the t-shirt he wore into work that day. Thus, "we conclude that one need not exchange clothes to change clothes for purposes of applying § 203(o)." *Id.* Rather, one can also change

---

**³**Our interpretation of the term "clothes" is consistent with that of the Department of Labor, the agency responsible for administering the FLSA. *See* Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. No. FLSA2002-2 (June 6, 2002) ("[W]e interpret 'clothes' under section 3(o) to include items worn on the body for covering, protection, or sanitation . . . ."); *see also* Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. No. FLSA2007-10 (May 14, 2007) (reiterating this view). We recognize that the Department has not always held this view. *See* Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. (Dec. 3, 1997) ("[S]ection 3(o) does not encompass protective safety equipment . . . ."); *see also* Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. (Jan. 15, 2001) (reiterating this view). The Eleventh Circuit found the more recent letter "more persuasive than the earlier ones." *Anderson*, 488 F.3d at 957. Whatever may be the case, our own view rests upon the language of the statute, not upon the gyrating agency letters on the subject.

something by modifying it. Accordingly, the employees' act of donning and doffing their equipment fits comfortably within the meaning of "changing."[4]

B.

Our reading of the text finds additional support in the purpose of Section 203(o), made evident by the circumstances leading to its enactment. Both Section 203(o) and the Portal-to-Portal Act, enacted two years earlier, were intended to give employers and employees greater latitude to determine when the work day begins and ends. Were we to adopt the appellants' reading of Section 203(o)'s text, we would undermine rather than respect that purpose.

As noted above, the FLSA, which was enacted in 1938, does not define the terms "work" or "workweek." The Supreme Court defined these terms "broadly" in its early FLSA cases. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005). It defined them so broadly, in fact, that Congress found it necessary to amend the statute to restore some sanctity to private employment contracts.

---

[4]The employees also contend that the term "washing" in Section 203(o) does not apply to their act of washing gear at the beginning and end of each shift. Like the word "clothes," the word "washing" is not qualified. We see no reason, therefore, to treat "washing" differently than "clothes." The basic problem with the employees' complaint is that it seeks to qualify the words "washing" and "clothes," but the statute simply does not read that way.

Lastly, the employees seek compensation for the time they spend during their lunch breaks donning and doffing a few items, washing, and walking to and from the cafeteria. This time is non-compensable, however, because it is part of a bona fide meal period, *see* 29 C.F.R. § 785.19 ("Bona fide meal periods are not worktime."), and, in the alternative, *de minimis*. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.").

Most relevant here, the Court held in 1946 that "the statutory workweek" included "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946). As a result, time spent performing "preliminary activities" after arriving at the workplace such as "putting on aprons and overalls, removing shirts, taping or greasing arms, [and] putting on finger cots" counted as work. *Id.* at 692-93.

Many employers, however, did not have a custom or practice of paying their employees for such preliminary activities. Consequently, they faced a flood of FLSA suits following the *Mt. Clemens* decision. "By some reports, claims totaling a billion dollars on behalf of industrial employees were filed" by the end of 1946. Leah Avey, Note, *Walk to the Line, Compensable Time: Cash in the Pockets of Employees*, 32 Okla. City U. L. Rev. 135, 142 (2007).

In 1947, Congress reacted to this situation by passing the Portal-to-Portal Act. There Congress found that the FLSA had "been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation." 29 U.S.C. § 251(a). With respect to existing claims, Congress provided that "[n]o employer shall be subject to any liability or punishment" for failing to pay their employees for time that had not been compensable under then-existing contracts, customs, or practices. § 252(a). With respect to future claims, Congress provided that employers would not be required to pay their employees for, among other things, "activities which are preliminary to or postliminary to [the employee's] principal activity or activities." § 254(a)(2). Whether those activities were compensable was restored to the realm of contract, custom, and practice. § 254(b).

Two years later, Congress continued its effort to restore sanctity to private agreements by adding Section 203(o) to the

FLSA. The sponsor of the amendment stated that its purpose was to "avoid[] another series of incidents which led to the portal-to-portal legislation." 95 Cong. Rec. 11210 (1949) (comments of Representative Herter). He observed that many employers and employees had "carefully threshed out" through the collective-bargaining process whether "the time taken to change clothes . . . is considered a part of the working day." *Id.* The language of Section 203(o) is thoroughly reflective of that purpose. Like the Portal-to-Portal Act, Section 203(o) reflects Congress's intention to give private parties greater discretion to define the outer limits of the workday.

The reasons behind this legislative judgment are not difficult to discern. First of all, Congress recognized that employers and unions are in a better position than either courts or agencies to "thresh[] out," *Id.*, how many minutes of compensable time to allocate to which tasks of "changing clothes." While employers and employee representatives can tailor solutions at the bargaining table to fit their particular circumstances and while negotiating parties can modify those solutions to address changing conditions, courts and agencies would find themselves in a morass of difficult, fact-specific determinations if they were ultimately charged with deciding whether and how much of this time was compensable. In short, the statute evidences a preference for private resolution of such workplace concerns, rather than management of small increments of time and particular items of clothing through the judiciary.

Second, collective bargaining allows employers and unions to reach agreements that leave both sides more satisfied than a government-imposed solution would. A union, for instance, may be willing to trade off compensation for changing clothes in return for such other objectives as higher hourly wages, enhanced benefits, or improved working conditions—as one of the unions in this very case apparently did. And an employer may be willing to offer a higher hourly wage or other benefits in lieu of compensating employees for changing

clothes, given that this activity may be difficult to monitor. Taking this issue out of the give-and-take of the collective-bargaining process and putting it in courts or agencies could preclude such flexible and mutually preferable agreements.

Finally, the issue here is not whether employees should wear protective gear or whether the government may mandate that they do so. It is simply "whether [employees] should be compensated for the time they spend doing so." *Figas*, 2008 WL 4170043, at *10 n.12. And Congress has concluded that employees would be better off if this issue were subject to collective bargaining. For, "[i]t would disserve the workers the Fair Labor Standards Act is meant to protect if employers who wished to introduce . . . more protective gear in the workplace knew that in doing so they would lose their ability to bargain with their union over the compensability of donning and doffing protective gear." Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. No. FLSA2002-2 (June 6, 2002). This sort of disincentive to workplace safety is not one that courts should casually introduce, especially in the face of a clear and contrary congressional mandate by Section 203(o).

### IV.

For the reasons above, we find that the activity of donning and doffing protective gear constitutes "changing clothes" within the meaning of Section 203(o) and is therefore not compensable under the prevailing customs or practices at the Harbeson plant. We stress that our decision does not leave these employees without protection. It simply recognizes that Congress has made a policy choice that, when it comes to time spent changing clothes and washing, the respective interests involved are best protected through the collective-bargaining process and the agreements negotiated pursuant thereto.

Accordingly, the judgment of the district court is

*AFFIRMED.*