WILKINSON, Circuit Judge,
concurring in part and concurring in the judgment:
I am happy to concur in substantial part in Judge Keenan’s thoughtful opinion. It does a fine job explaining why donning and doffing at the beginning and end of the workday is compensable. The court rightly notes that this case presents a different question than Sepulveda v. Allen Family Foods, Inc., 591 F.3d 209 (4th Cir.2009). There, we addressed whether donning and doffing personal protective gear was “changing clothes” for purposes of 29 U.S.C. § 203(o), but that provision applies exclusively to the collective bargaining context. Sepulveda expressly reserved the question of whether donning and doffing protective equipment outside of the collective bargaining context is compensable, id. at 214, and I agree for the most part that it is.
With respect to lunch-break doffing and donning (sections IV.B and D), I write simply to note that the Fair Labor Standards Act does not require that every controversy over ever-smaller increments of time be litigated out to three decimal places. The de minimis rule in place at the Supreme Court and the circuits imposes some outer limits on this process, and I believe that requiring compensation of lunchtime doffing and donning would exceed those limits here.
I.
The de minimis doctrine is not in some embryonic state. Were this a matter of first impression, I would have some hesitation in saying that a de minimis exception qualifies the Fair Labor Standards Act. The rule has no obvious statutory derivation, and it would be preferable for Congress rather than the courts to supply its content. For many decades, however, Congress has declined to address the de minimis doctrine and has left the courts to develop it essentially as a matter of federal common law.
*377 Thus we find ourselves bound by a doctrine whose origins we are not free to question. The Supreme Court and numerous circuits have adopted the de minimis rule, and I believe a respect for higher authority and the broad consensus of our sister circuits obliges us to afford that rule some meaningful content.
The FLSA de minimis doctrine first appeared in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). In that case, the Supreme Court addressed the compensability of the everyday activity of walking to a workstation after punching a time card. Though the employer paid only for line time, employees could clock in up to fourteen minutes before their shift began in order to leave sufficient time for walking. Id. at 683, 66 S.Ct. 1187. The Court concluded that the compensable working time presumptively included “the minimum time necessarily spent in walking at an ordinary rate along the most direct route from time clock to work bench.” Id. at 692, 66 S.Ct. 1187. Such walking time was estimated at anywhere from 30 seconds to eight minutes. Id. at 683, 66 S.Ct. 1187.
The Supreme Court recognized, however, that compensable time “must be computed in light of the realities of the industrial world.” Id. at 692, 66 S.Ct. 1187. As a result, “[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.” Id. The Court ultimately concluded that the “de minimis rule can doubtless be applied to much of the walking time.” Id. It also noted that the de minimis doctrine would apply to activities that took place at the work bench, including “putting on aprons and overalls, removing shirts, taping or greasing arms, putting on finger cots, preparing the equipment for productive work, turning on switches for lights and machinery, opening windows and assembling and sharpening tools.” Id. at 692-93, 66 S.Ct. 1187. While the Portal-to-Portal Act of 1947 eventually superseded Anderson’s holding that walking on the employer’s premises and other preliminary and postliminary activities were compensable, see 29 U.S.C. § 254(a), it left undisturbed Anderson’s holding that de minimis periods of work are noncompensable.
The circuit courts have not hesitated to apply the holding of Anderson to other cases involving small amounts of work-time. See, e.g., Rutti v. Lojack Corp., 596 F.3d 1046, 1057-58 (9th Cir.2010) (filling out minimal paperwork at home de minim-is); Singh v. City of New York, 524 F.3d 361, 371-72 (2d Cir.2008) (additional commuting time due to carrying briefcase de minimis); Alvarez v. IBP, Inc., 339 F.3d 894, 903-04 (9th Cir.2003) (donning and doffing of hardhats and safety goggles de minimis); Reich v. IBP, Inc., 38 F.3d 1123, 1126 n. 1 (10th Cir.1994) (same); Aiken v. City of Memphis, 190 F.3d 753, 758 (6th Cir.1999) (dog-care duties during handlers’ commute de minimis); Bobo v. United States, 136 F.3d 1465, 1468 (Fed.Cir.1998) (same); Reich v. New York City Transit Auth., 45 F.3d 646, 652-53 (2d Cir.1995) (same); Lindow v. United States, 738 F.2d 1057, 1063-64 (9th Cir.1984) (reviewing log book and clarifying log entries de minim-is); E.I. du Pont De Nemours & Co. v. Harrup, 227 F.2d 133, 136 (4th Cir.1955) (counting cash before start of cashier shift de minimis); Frank v. Wilson & Co., 172 F.2d 712, 716 (7th Cir.1949) (clocking in, receiving instructions from supervisors, obtaining tools, and walking to work station all de minimis). Following the lead of Anderson, many of these de minimis periods involved regular, daily occurrences. See, e.g., Alvarez, 339 F.3d at 903-04; Reich v. IBP, Inc., 38 F.3d at 1126 n. 1.
*378 Given the presence of this standard, and its widespread adoption, it is obvious that we must strike “a balance between requiring an employer to pay for activities it requires of its employees and the need to avoid ‘split-second absurdities’ that ‘are not justified by the actuality of the working conditions.’ ” Rutti, 596 F.3d at 1057 (quoting Lindow, 738 F.2d at 1062). On the one hand, to give the de minimis rule too broad a reach would contradict congressional intent by denying proper effect to a statute that is “remedial and humanitarian in purpose.” Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944). Congress obviously desired in the FLSA to protect those whose lives and families depend upon a decent wage, see 29 U.S.C. § 202(a), and we have recognized this case as one where the humanitarian purpose of the FLSA must be accorded effect. The jobs performed by the poultry workers in this case are indisputably important. However, jobs performed in poultry plant production lines can also be tough, repetitive, and difficult, and the workers here are undeniably within the core class of employees whose “health, efficiency, and general well-being” the FLSA was intended to protect. Id. For these reasons, I am happy to join the court in concluding that donning and doffing at the beginning and end of the workday is not de minimis.[1]
II.
On the other hand, we cannot just toss the de minimis rule aside. Presumably, the Supreme Court recognized the role of the de minimis doctrine in FLSA cases for a reason. In Anderson, the Court acknowledged that a de minimis rule is necessary because “[t]he workweek contemplated by [the FLSA] must be computed in light of the realities of the industrial world,” and those “realities of the industrial world” must include the commonsense observation that the computations of ever smaller increments of time may eventually become so onerous that they should not be the subject of endless litigation. 328 U.S. at 692, 66 S.Ct. 1187. At least I can think of no reason for a de minimis rule other than preventing companies from being saddled with ceaselessly litigable computations over just “a few seconds or minutes.”
This case illustrates the litigation difficulties that the de minimis rule was meant to forestall. In order to resolve a dispute over donning and doffing activities that each take but a few minutes, the parties were required to hire dueling experts accompanied by teams of assistants who collectively studied almost 400 employees. While it is true that “both experts in the present case were able to measure the amount of time required by employees to don and doff protective gear,” Majority Op. at 374, the experts often felt it necessary to carry their computations out to no fewer than three decimal places. Indeed, one expert’s analysis required him to scroll frame-by-frame through videos of donning and doffing employees in order to measure their times to within 1/30 of a second. Perez v. Mountain Farms, Inc., 610 F.Supp.2d 499, 507 (D.Md.2009). Thus the time expended in these activities does present computational problems as a practical matter. For despite measurement precision fit for an Olympic race, the duel *379 ing experts came to staggeringly different conclusions. It hardly seems necessary to state that this sort of dispute semes as a veritable invitation to extensive litigation.
Absent some de minimis rale, no company could fairly predict its liability for the smallest fragments of time without the aid of legal counsel, and even then, the presence of factually uncertain litigation outcomes leaves employers unclear as to the magnitude of their potential liability. For in cases such as this one, there seems little practical possibility of consensus between the parties regarding how much time should be compensated. Here, for example, a large gulf lay between the two experts’ calculations: whereas the plaintiffs’ expert found that donning and doffing throughout the day took an average of 20.879 minutes, id. at 509, Mountaire’s expert concluded that those activities required only 10.2 minutes, id. at 512.
In our adversary system, calculations such as these are unlikely ever to be a cut- and-dried matter. Of course courts can always step in to resolve the gritty details relevant to the proper computation in any particular case. See, e.g., Alvarez v. IBP, Inc., 339 F.3d 894, 906 (9th Cir.2003), affd, 546 U.S. 21,126 S.Ct. 514, 163 L.Ed.2d 288 (2005) (post-donning walking time compensable); id. (pre-doffing walking time compensable); Turn v. Barber Foods, Inc., 360 F.3d 274, 281-82 (1st Cir.2004), rev’d on other grounds, Alvarez, 546 U.S. at 41-42, 126 S.Ct. 514 (pre-donning waiting time not compensable); Majority Op. at 372 (“time spent by the employees after acquiring their protective gear but before donning it, and after doffing the gear until fully discarding it, is compensable”); Turn, 360 F.3d at 283 (same); Majority Op. at 372 (mean rather than minimum donning and doffing time compensable); Musch v. Domtar Indus., Inc., 587 F.3d 857, 860-61 (7th Cir.2009) (post-shift showering not compensable); Gorman v. Consol. Edison Corp., 488 F.3d 586, 593 (2d Cir.2007) (security procedures before entering workplace not compensable); Bonilla v. Baker Concrete Constr., Inc., 487 F.3d 1340, 1344-45 (11th Cir.2007) (same). But these persistent problems of measurement and demarcation mimic the heads of the Hydra: cut down one, and two spring up in its stead. There is simply no quantum of judicial or agency guidance that can convey to companies precisely what small activities are compensable and how many minutes and fractional seconds should be allotted to them. If the Supreme Court is prepared to jettison the de minimis doctrine, that is fine. But so long as it exists, there must be some outer limits on the sort of granular metrics that have characterized this kind of litigation.
III.
In this case, the lunchtime doffing and donning falls on the de minimis side of those limits. The substantial differences between donning and doffing at the beginning and end of the day on the one hand and doffing and donning at lunch on the other hand support this conclusion. First of all, the amount of time involved in lunchtime doffing and donning is relatively minor. The plaintiffs’ expert, on whose study the district court based its findings, found that doffing at the start of the lunch break required an average of only 2.571 minutes, and post-lunch donning only 4.225 minutes. Perez, 610 F.Supp.2d at 509. Both are less than half of the time the plaintiffs’ expert found necessary for doffing and donning at the end and beginning of the day, respectively. Id. While this to be sure is a difference of degree, the de minimis doctrine necessarily contemplates that such significant differences as this may preclude compensation, for if matters *380 of degree were never significant, there would be no de minimis rule at all.
But even those small figures likely overstate the actual amount of time involved. Although the plaintiffs’ expert concluded that the total donning and doffing time throughout the day was 20.879 minutes, the district court found that figure “to be a slight overestimation of the total time” and reduced it to 17 minutes. Id. at 524. If the reduction that the district court applied to the total time collectively applied proportionately to lunchtime doffing and donning individually — and the district court gave no indication why it should not — then these lunchtime activities would occupy only 2.093 and 3.440 minutes, respectively, for a total of less than six minutes.
It is true that even such small increments of time can be aggregated over time to produce an impressive-sounding number. But the mere fact of multiplication cannot be used to scrap the de minimis rule altogether. For like the lunchtime doffing and donning in this case, other daily periods of work have been found de minimis, see, e.g., Anderson, 328 U.S. at 692-93, 66 S.Ct. 1187 (walking to work bench and pre-shift preparations de minimis); Alvarez, 339 F.3d at 903-04 (donning and doffing of hardhats and safety goggles de minimis); Reich v. IBP, Inc., 38 F.3d at 1126 n. 1 (same), and there is no number so small that a suitable multiplier cannot make large.
Lunchtime doffing and donning also differs from its beginning-and end-of-day counterpart because the former is incident to a bona fide meal period, which is specifically exempted from compensation by a regulation that itself breaks up the continuous workday. See 29 C.F.R. § 785.19 (“Bona fide meal periods are not work-time.”). Given the combination of brevity and the bracketing of a non-compensable meal break, doffing and donning time before and after lunch cannot be of compensable character.[2] Striking the balance in this way has the advantages of following the standards laid down by the Supreme Court, of respecting our own circuit precedent, and of recognizing that in this difficult doctrinal area, the arguments put forth by the employees and Mountaire each have their points of merit.
IV.
I admit to some discomfort applying any sort of balancing act where the Fair Labor Standards Act does not appear to provide one. However, I believe that the de minimis standard articulated by the Supreme Court in Anderson requires it. And if one is to undertake in this case the sort of de minimis inquiry mandated by Anderson and the decisions of our own and sister circuits, it cannot lead to some stark all-or-nothing disposition in favor of either management or labor.
The best way to recognize that fact is indeed the way the majority has recognized ih — to credit on the one hand the *381 donning and doffing at the beginning and end of the workday, and on the other hand to avoid making the lesser lunch-break doffing and donning a matter of perpetual litigation. I concede that my approach herein provides no cleaner analytical line than does the loose three-factor Lindow formulation. The caselaw in this area is itself a mush, albeit one that redeemably recognizes the need to compensate workers fairly for work performed without driving companies crazy with microscopic litigation. Once in a good while outcomes that are analytically impure may be eminently just. The de minimis doctrine requires the courts to travel that road, and I believe that my distinguished colleagues and I have reached, through perhaps distinctive routes, the proper destination.

. My good colleagues assert that this Court's observation in Green v. Planters Nut & Chocolate Co., 177 F.2d 187 (4th Cir.1949), that a ten-minute period of uncompensated work was de minimis “is merely dicta.” Majority Op. at 373. But because the 10.204 minutes of donning and doffing at the beginning and end of the workday in this case falls outside any such "ten-minute rule”, Green is simply inapposite. There is no need to address its precedential force, lest we use dicta to overrule asserted dicta.

. Sepulveda did not dispute that employees’ entitlement to compensation under the FLSA is frequently a factual issue, see Roy v. County of Lexington, 141 F.3d 533, 545 (4th Cir. 1998), but instead recognized that in the circumstances of the Sepulveda case, judgment as a matter of law was appropriate. 591 F.3d at 217 n. 4; see also Alvarez, 339 F.3d at 903 ("The time it takes to [don and doff] non-unique protective gear is de minimis as a matter of law."); Reich v. IBP, Inc., 38 F.3d at 1126 n. 1 ("the time spent putting on and taking off [non-unique gear] is de minimis as a matter of law"). This is not inconsistent with Roy, for the fact that some issues are tried under Fed.R.Civ.P. 52 does not render Fed.R.Civ.P. 56 universally inapplicable. Roy did not even involve application of the de minimis doctrine, the very point at issue here.