FILED
United States Court of Appeals
Tenth Circuit

**July 5, 2011**

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

CLARA E. SALAZAR; JUANITA
YBARRA, (Proposed Collective and
Class Action Representatives), on
behalf of themselves and others
similarly situated,

     Plaintiffs-Appellants,

v.

BUTTERBALL, LLC,

     Defendant-Appellee.

_____

NATIONAL EMPLOYMENT
LAWYERS ASSOCIATION; UNITED
FOOD AND COMMERCIAL
WORKERS, LOCAL UNION NO. 7R;
UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL
UNION,

     Amici Curiae.

No. 10-1154

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:08-CV-02071-MSK-CBS)**

---

T. Joseph Snodgrass, (Kelly Swanson and Troy F. Tatting of Larson • King, LLP,
St. Paul, Minnesota; J. Gordon Rudd, Jr., Anne T. Regan and Patricia A.
Bloodgood of Zimmerman Reed, PLLP, Minneapolis, Minnesota; Stanley M.
Gosch and Richard Rosenblatt of Richard Rosenblatt & Assoc., LLC, Greenwood

Village, Colorado, with him on the briefs), of Larson • King, LLP, St. Paul, Minnesota, for Plaintiff-Appellants.

Stephen X. Munger, (Eric R. Magnus of Jackson Lewis LLP, Atlanta, Georgia; Ryan P. Lessmann of Jackson Lewis LLP, Denver, Colorado, with him on the brief), of Jackson Lewis, LLP, Atlanta, Georgia, for Defendant-Appellee.

Lin Chan and David Borgen of Goldstein, Demchak, Baller, Borgen & Dardarian, Oakland, California, and David Lichtenstein, Denver, Colorado, filed a brief for National Employment Lawyers Association as Amicus Curiae in support of Plaintiff-Appellants.

Renee L. Bowser, Assistant General Counsel, United Food and Commercial Workers International Union, Washington, D.C., and John P. Bowen, UFCW Local 7R, Wheat Ridge, Colorado, filed a brief for United Food and Commercial Workers International Union and United Food and Commercial Workers Union Local 7R as Amici Curiae in support of Plaintiff-Appellants.

---

Before **BRISCOE,** Chief Judge, **SEYMOUR** and **LUCERO**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

In this case we are asked to decide whether donning and doffing poultry processing workers' personal protective equipment is "changing clothes" under 29 U.S.C. § 203(o) and whether a turkey processing plant is a food and beverage industry employer under 7 Colo. Code Regs. § 1103-1:2. Plaintiffs/appellants Clara Salazar and Juanita Ybarra (together, plaintiffs) brought claims on behalf of hourly production employees at defendant/appellee Butterball, LLC's (Butterball) Longmont, Colorado turkey processing plant. Plaintiffs claim that Butterball's failure to compensate donning and doffing time violates the Fair Labor Standards

2

Act of 1938, 29 U.S.C. §§ 201-219 (FLSA), and Colorado Minimum Wage Order

27, 7 Colo. Code Regs. § 1103-1 et seq. (Wage Order 27).[1]  The district court

entered summary judgment in Butterball's favor based on determinations that

donning and doffing time was excluded from FLSA hours worked pursuant to 29

U.S.C. § 203(o) and that Wage Order 27 did not apply to Butterball.  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

I

*Factual Background*

Butterball's Longmont plant produces turkey products, including cooked

ready-to-eat (RTE) turkey products.  Butterball acquired the plant from ConAgra

Foods in 2006.  Butterball retained the same workforce, management, and pay

practices that were in place during ConAgra's ownership.

The plaintiffs worked at various times in the plant's deboning, evisceration,

packaging, and quality assurance departments.  They were required to don various

items of apparel and equipment prior to their shifts and to doff such items after

their shifts.  Generally, production employees wore frocks, aprons, plastic

sleeves, gloves, cotton glove liners, boots or overshoes, hard hats, earplugs, and

safety glasses.  When working in the deboning and evisceration areas, plaintiffs

---

[1] The Colorado wage order at issue has been re-numbered several times.  At the time plaintiffs filed their complaint, it was number 24.  This opinion will refer to the wage order by its current number: 27.

3

also wore mesh gloves, knife holders, and arm guards. As the parties have done, we refer to these items collectively as personal protective equipment, or PPE. See Aplt. Br. at 3, Aple. Br. at 3-4.

Butterball, continuing ConAgra's practice, has never paid most production employees for donning and doffing time.[2] Aplt. Add. at 89. The plaintiffs are aware that they have never been paid for donning and doffing time. Aple. Add., Vol. I at 7, 213.

Production employees at the plant are represented by United Food and Commercial Workers Local 7 (UFCW 7 or the Union). ConAgra and UFCW 7 entered into a collective bargaining agreement (CBA) for the period of February 6, 2005 through February 2, 2008. Aplt. App., Vol. III at 7. Butterball and UFCW 7 entered into a new CBA for the period of February 3, 2008 through February 2, 2009. Id. at 62. As of April 1, 2009, the Union was working without a contract, and the current status of negotiations is not evident from the record presented. Aple. Add., Vol I at 186. Neither CBA discusses donning and doffing pay or how hours worked are to be calculated.

On December 16, 2005, the Union filed a grievance claiming that employees should be paid for donning and doffing time. ConAgra denied the

---

[2] ConAgra paid employees in the live hang department an extra twenty minutes per day. Butterball continued this practice. Neither plaintiff worked in the live hang department, and the department was eliminated (along with the deboning and evisceration departments) in November 2008.

grievance and the Union demanded arbitration on November 13, 2006. Aplt. App., Vol. III at 115-17. However, arbitration did not occur. Butterball presented evidence that the grievance had been resolved by April 2008. Id., Vol. I at 463. On the other hand, the plaintiffs presented evidence that the Union considered the grievance to be pending, at least as of June 1, 2007. Aplt. Add. at 73 (affidavit dated June 1, 2007). It is undisputed that the issue of donning and doffing pay was not discussed during negotiations of either CBA.

*The FLSA, Portal-to-Portal Act, and 29 U.S.C. § 203(o)*

Congress enacted the FLSA in 1938 "to establish nationwide minimum wage and maximum hours standards." Moreau v. Klevenhagen, 508 U.S. 22, 25 (1993). Generally, the FLSA mandates that employees be paid a minimum wage and paid at an overtime rate for hours worked in excess of forty in a workweek. The statute does not define "work" or "workweek," and the Supreme Court's early FLSA decisions interpreted those terms broadly. IBP, Inc. v. Alvarez, 546 U.S. 21, 25 (2005). In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 690-91 (1946), the Supreme Court held that the "workweek" included "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace . . . ." Congress enacted the Portal-to-Portal Act, 29 U.S.C. §§ 251-62, in response to Mt. Clemens and other judicial decisions that, in Congress's view, interpreted the FLSA "in disregard of long-established customs, practices, and contracts between employers and employees, thereby

5

creating wholly unexpected liabilities." 29 U.S.C. § 251(a).

Among other things, the Portal-to-Portal Act provided that employers could not be liable under the FLSA for failure to compensate time an employee spent performing activities that were preliminary or postliminary to "the principal activity or activities which such employee is required to perform." 29 U.S.C. § 254(a). The Supreme Court interpreted this provision to mean that activities performed prior or subsequent to a regular work shift are compensable if they are "an integral and indispensable part of the principal activities for which covered workmen are employed . . . ." Steiner v. Mitchell, 350 U.S. 247, 256 (1956). In 2005, the Supreme Court held that, assuming donning and doffing was an integral and indispensable activity, any post-donning and pre-doffing walking time (i.e., between locker rooms and production areas) would be compensable under the Portal-to-Portal Act. IBP, 546 U.S. at 36.

Congress amended the FLSA again in 1949 enacting, among other provisions, what is now 29 U.S.C. § 203(o). Section 203(o) defines hours worked:

> Hours worked. – In determining for the purposes of sections 206 and 207 of this title [minimum wage and maximum hours] the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

6

*Colorado Wage Order 27*

The Colorado Minimum Wage Act, Colo. Rev. Stat. §§ 8-6-101 – 8-6-119, prohibits employment of workers "for wages which are inadequate to supply the necessary cost of living and to maintain the health of workers so employed" or "under conditions of labor detrimental to [workers'] health or morals." Colo. Rev. Stat. § 8-6-104. The Act also delegates to the Colorado Department of Labor the authority to set minimum wage and maximum hour standards. Colo. Rev. Stat. § 8-6-106. Pursuant to this authority, the Colorado Department of Labor issued Wage Order 27, which prescribes minimum wage and overtime requirements for employees in the retail and service, food and beverage, commercial support service, and health and medical industries. 7 Colo. Code Regs. § 1103-1:1.

*Procedural History*

Plaintiffs filed a complaint in the United States District Court for the District of Colorado, seeking to bring a collective action under the FLSA and a class action under Colorado law for compensation for time spent "donning, doffing, and sanitizing gear and equipment, and walking to and from the production floor." Aplt. App., Vol. I at 12-13. Butterball moved for summary judgment on both claims. A magistrate judge issued a Report and Recommendation determining that plaintiffs' PPE was clothes under 29 U.S.C. § 203(o) and there was a custom or practice of nonpayment, and that Butterball was

7

not subject to Wage Order 27.  The district court adopted the Report and Recommendation and entered summary judgment in Butterball's favor.  Plaintiffs appeal.

## II

This court reviews the grant of summary judgment de novo, applying the same standards as the district court.  Gwinn v. Awmiller, 354 F.3d 1211, 1215 (10th Cir. 2004).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We review the record on summary judgment in the light most favorable to the nonmoving party.  Gwinn, 354 F.3d at 1215.

## III

Plaintiffs contend that Butterball violated the FLSA by failing to compensate them for donning and doffing time.  Butterball argues that it is not required to compensate donning and doffing time for the following reasons: it is not work under the FLSA[3]; it is excluded from FLSA "hours worked" by 29 U.S.C. § 203(o); it is not compensable pursuant to the Portal-to-Portal Act, specifically 29 U.S.C. § 254(a); and it is de minimis.

---

[3] In Reich v. IBP, Inc., 38 F.3d 1123 (10th Cir. 1994), this court held that donning and doffing non-unique PPE was not "work" under the FLSA.  Because we base our ruling on § 203(o) and not on the general definition of "work," we need not determine whether the Supreme Court's IBP decision, 546 U.S. 21, affects our holding in Reich.  See n.4, infra.

The district court based its FLSA ruling on § 203(o), and we do the same. Section 203(o) excludes "any time spent changing clothes or washing" from "the hours for which an employee is employed" if such time "was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(o). We hold that donning and doffing the PPE at issue in this case is changing clothes and that there is a custom or practice of excluding donning and doffing time from measured working time under the collective bargaining arrangement between the Union and Butterball. We, therefore, affirm the district court's ruling that Butterball did not violate the FLSA by failing to pay plaintiffs for donning and doffing time.

*"Changing Clothes"*

The meaning of "changing clothes" under § 203(o) is a question of first impression in this circuit. As with all statutory interpretation cases, we begin with the language of the statute. Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002). If the statute has a "plain and unambiguous meaning with regard to the particular dispute in the case" and the statutory scheme is coherent and consistent, our inquiry ends. Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. at 341.

9

We conclude that the term "changing clothes" in § 203(o) is ambiguous. As evidenced by the differing interpretations of several courts and the United States Department of Labor Wage and Hour Division (the Wage and Hour Division), the word "clothing" is susceptible of multiple meanings, particularly in the industrial labor context where specialized apparel and equipment is often worn. The other circuit courts that have considered the meaning of "changing clothes" under § 203(o) have reached differing conclusions. The Fourth, Fifth, Sixth, Seventh, and Eleventh Circuits have held that donning and doffing PPE is changing clothes within § 203(o). See Spoerle v. Kraft Foods Global, Inc., 614 F.3d 427, 428 (7th Cir. 2010) (meat production workers' boots, hard hats, smocks, and hair nets), cert. denied, 131 S. Ct. 933 (2011); Franklin v. Kellogg Co., 619 F.3d 604, 614-15 (6th Cir. 2010) (frozen food workers' uniforms and PPE, including hair nets, safety glasses, ear plugs, and hard hats); Sepulveda v. Allen Family Foods, Inc., 591 F.3d 209, 215-18 (4th Cir. 2009) (poultry workers' PPE), cert. denied, 131 S. Ct. 187 (2010); Anderson v. Cagle's, Inc., 488 F.3d 945, 955-56 (11th Cir. 2007) (poultry workers' PPE); Bejil v. Ethicon, Inc., 269 F.3d 477, 480 n.3 (5th Cir. 2001) (lab coats, hair covers, and shoe covers). The Ninth Circuit has reached a different conclusion, holding that meat production workers' unique PPE (for example, Kevlar gloves) is not clothes under § 203(o).[4] Alvarez

---

[4] The Ninth Circuit also held that donning and doffing unique and non-
(continued...)

v. IBP, Inc., 339 F.3d 894, 904-05 (9th Cir. 2003), aff'd on other grounds, IBP, 546 U.S. 21.

The Wage and Hour Division has repeatedly shifted its position when asked to interpret the meaning of "changing clothes." "The [Wage and Hour Division] issues opinion letters to explain the requirements of the FLSA and its regulations and how they apply to particular circumstances." In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1184 (10th Cir. 2005) (internal quotation and alterations omitted). In 1997, it issued an opinion letter determining that "clothes" in § 203(o) did not encompass "protective safety equipment which is generally worn over . . . apparel and may be cumbersome in nature." Wage and Hour Division, Opinion Letter Fair Labor Standards Act dated Dec. 3, 2007, 1997 WL 998048. The Division then reversed this position in 2002, determining upon "a reexamination of the statute and legislative history," that "changing clothes" applies to "the putting on and taking off of the protective safety equipment typically worn in the meat packing industry . . . ." Wage and Hour Division, Opinion Letter Fair Labor Standards Act FLSA 2002-2 dated June 6, 2002, 2002 WL 33941766. In 2007,

---

[4](...continued)
unique PPE (for example, hard hats and safety goggles) was compensable under the Portal-to-Portal Act because it was integral and indispensable to primary activities, but that donning and doffing non-unique PPE was ultimately not compensable because it was de minimis. Alvarez, 339 F.3d at 903-05. The Supreme Court affirmed the Ninth Circuit's holding regarding unique PPE and the Portal-to-Portal Act, and did not discuss the Ninth Circuit's holdings regarding § 203(o) or the de minimis exception. IBP, 546 U.S. at 30.

11

the Wage and Hour Division declined to alter its interpretation in light of the Ninth Circuit's <u>Alvarez</u> decision. Wage and Hour Division, <u>Opinion Letter Fair Labor Standards Act FLSA 2007-10 dated May 14, 2007</u>, 2007 WL 2066454. Then, in 2010 (after the district court issued its ruling in the instant case), the Division reverted to its previous interpretation and determined that § 203(o) "does not extend to protective equipment worn by employees that is required by law, by the employer, or due to the nature of the job." Wage and Hour Division, <u>Opinion Letter Fair Labor Standards Act FLSA 2010-2 dated June 16, 2010</u>, 2010 WL 2468195.

Having determined that "changing clothes" is ambiguous, "we are left to resolve that ambiguity." <u>Robinson</u>, 519 U.S. at 345. The first question is whether we must construe the term in the plaintiffs' favor. In <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392 (1960), the Supreme Court stated that exemptions to the FLSA are to be construed narrowly against the employers seeking to assert them. The Court was referring specifically to section 13 of the FLSA (29 U.S.C. § 213), which is titled "Exemptions." The plaintiffs argue that § 203(o) is an exemption from the FLSA, notwithstanding the fact that it is in the definitions section (section 3 of the FLSA) and not in the exemptions section. The Fifth, Sixth, and Eleventh Circuits have rejected the plaintiffs' argument and held that § 203(o) is not an exemption. <u>Allen v. McWayne, Inc.</u>, 593 F.3d 449, 458 (5th Cir. 2010); <u>Franklin</u>, 619 F.3d at 612; <u>Anderson</u>, 488 F.3d at 957; <u>cf.</u>

12

Adams v. United States, 471 F.3d 1321, 1325-26 (Fed. Cir. 2006) (holding that

the Portal-to-Portal Act's exclusion of certain activities from FLSA coverage was

not an exemption and did not need to be construed against the employer). On the

other hand, the Ninth Circuit assumed, without analysis, that § 203(o) is an

exemption and must be read narrowly. Alvarez, 339 F.3d at 905.

We conclude that § 203(o) is not an exemption and, therefore, we do not

read it narrowly or in the plaintiffs' favor. Section 203(o) differs from the

exemptions in 29 U.S.C. § 213 in three important respects. First, it is part of the

definition of hours worked and is not specifically designated as an exemption.

Second, § 203(o) removes only particular discrete activities from the definition of

hours worked, whereas the § 213 exemptions remove entire classes of employees

from FLSA coverage.[5] Employees who are potentially affected by § 203(o) are

still entitled to the bulk of the FLSA's protections, whereas employees affected

by an FLSA exemption are entitled to no FLSA protections at all. Third, § 203(o)

does not exactly remove discrete activities from FLSA coverage; it gives

employers and employees the option of removing those activities from FLSA

---

[5] We note that, in Nichols v. Hurley, 921 F.2d 1101, 1103 (10th Cir. 1990) (per curiam), this court assumed, without analysis, that 29 U.S.C. § 203(e)(2)(C)(ii)(II) (excluding personal staff of elected officials from the definition of employee), was an exemption from the FLSA that must be construed narrowly. Nichols is not persuasive here because § 203(e)(2)(C)(ii)(II) has greater similarity to a § 213 exemption than does § 203(o). Section 203(e)(2)(C)(ii)(II) excludes an entire class of employees from the FLSA's coverage.

13

coverage through collective bargaining.

We hold that "clothes" under § 203(o) includes the PPE worn by the plaintiffs in this case. An expansive construction is consistent with the ordinary meaning of the word "clothes," and makes more sense than a construction that would differentiate between apparel and equipment designed for safety purposes and other apparel and equipment, or between non-unique and unique apparel and equipment.

As a preliminary matter, we decline to defer to the Wage and Hour Division's most recent interpretation of § 203(o) or, for that matter, any of the Wage and Hour Division's interpretations. Agency opinion letters are entitled to respect under Skidmore v. Swift & Co., 323 U.S. 134 (1944), to the extent that they have the "power to persuade." Clements v. Serco, Inc., 530 F.3d 1224, 1229 (10th Cir. 2008). Where, as here, an agency repeatedly alters its interpretation of a statute, the persuasive power of those interpretations is diminished. See Pacheo v. Whiting Farms, Inc., 365 F.3d 1199, 1205 n.3 (10th Cir. 2004) ("An agency interpretation that conflicts with the agency's earlier interpretation is . . . entitled to considerably less deference than a consistently held position."). Further, for the reasons discussed below, we do not find the agency's current position particularly well-reasoned. Accord Franklin, 619 F.3d at 614 (declining to defer to the 2010 opinion letter because the agency's position has changed repeatedly and because the court found the letter's interpretation to be inconsistent with the

14

language of the statute).

We begin our analysis of § 203(o) "with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2350 (2009) (internal quotation omitted). The ordinary meaning of the term "clothes" is quite broad and contemplates items or garments worn by a person. See, e.g., Oxford Univ. Press, Oxford English Dictionary (2010 ed.) (defining clothes as "covering for the person; wearing apparel; dress, raiment vesture"); Sepulveda, 591 F.3d at 214-15 ("[Clothing is] covering for the human body or garments in general: all the garments and accessories worn by a person at any one time." (quoting Webster's Third New Int'l Dictionary 428 (1986 ed.)).[6] The ordinary meaning of "clothes" would appear to encompass all the items of PPE worn by plaintiffs. Accord Sepulveda, 591 F.3d at 215; Franklin, 619 F.3d at 614. PPE items are worn on and cover the body. Smocks, boots, sleeves, gloves and hats would, in other contexts (such as if worn on the street), obviously be considered clothes.

---

[6] The Wage and Hour Division has criticized courts' reliance on dictionary definitions of "clothes." Wage and Hour Division, Opinion Letter Fair Labor Standards Act FLSA 2010-2 dated June 16, 2010, 2010 WL 2468195. However, the Supreme Court regularly cites dictionary definitions when explaining the ordinary or common meaning of a word. See, e.g., Milner v. Dep't of Navy, 131 S. Ct. 1259, 1264 (2011); CSX Transp., Inc. v. Ala. Dep't of Revenue, 131 S. Ct. 1101, 1108 (2011); Burlington N. and Santa Fe Ry. Co. v. United States, 129 S. Ct. 1870, 1879 (2009).

15

Plaintiffs contend that "clothes" does not include PPE because PPE is designed to protect against workplace hazards, serves specialized functions, and is required by the employer or by law. Similarly, the Wage and Hour Division currently distinguishes between everyday clothes and items required by law or by the employer. We do not find this distinction particularly coherent or workable. Accord Franklin, 619 F.3d at 614 ("[W]e see no reason to distinguish between protective and non-protective clothes."); Sepulveda, 591 F.3d at 215 (failing "to see why the term 'clothes' would refer only to 'ordinary' or 'street' clothes," and rejecting a distinction between uniforms and protective clothes); Anderson, 488 F.3d at 956 (rejecting plaintiffs' contention that § 203(o) did not apply to any protective clothing). Many "everyday" items of clothing are worn for safety or protective purposes, including shoes. Cf. Sepulveda, 591 F.3d at 215 ("[T]he steel-toe shoes at issue here could be reasonably classified as either 'normal' clothes or 'protective gear.'"). An approach that excludes apparel with functional aspects from "clothes" is far afield from any common understanding of the word because clothes are largely functional. Further, many items of work apparel that look like or replace traditional street clothes, such as scrubs or uniforms, are required by the employer and serve a work-related purpose. See Turner v. City of Phila., 262 F.3d 222, 224 (3d Cir. 2001) (explaining that § 203 "provides a specific exclusion from the calculation of hours worked for clothes and uniform change time" (emphasis added)). Congress specifically contemplated that the

16

clothes being changed would be worn for work purposes because § 203(o) discusses clothes changing at the beginning and end of the workday. See Franklin, 619 F.3d at 614 ("[B]ecause the statute indicates that § 203(o) applies to changing into clothes worn during the workday, Congress was referring to clothes worn for the workday and not simply 'ordinary' clothes."). Frocks, aprons, sleeves, gloves, boots, and hard hats are clothes even though they serve specific protective or sanitary functions or are required by Butterball. Cf. Reich, 38 F.3d at 1126 n.1 (holding that donning and doffing non-unique PPE was not "work" under the FLSA because it was analogous to "having a baseball player show up in a uniform, a businessperson with a suit and tie, or a judge with a robe").

In Alvarez, the Ninth Circuit made a slightly different distinction: between generic protective clothing (or non-unique PPE), such as boots, hard hats, and frocks, and unique PPE, such as mesh gloves or knife holders. 339 F.3d at 905. Certainly, unique PPE is less similar to common clothing than non-unique PPE because it does not look like or replace items that employees would normally wear outside of work. We have recognized a distinction between unique and non-unique PPE in a slightly different context. In Reich, we held that donning and doffing unique PPE was "work" under the FLSA, whereas donning and doffing non-unique PPE was not. 38 F.3d at 1126 ("[Unique PPE] items are heavy and cumbersome, and it requires physical exertion, time, and a modicum of concentration to put them on securely and properly.").

17

Nonetheless, we determine that the unique PPE worn by the plaintiffs in this case is clothing under § 203(o). The plaintiffs' unique PPE is not so cumbersome, heavy, complicated, or otherwise different in kind from traditional clothing that it should not be considered "clothes." Cf. Franklin, 619 F.3d at 614-15 ("We recognize that there may be some heavier protective equipment than what is at issue here that is not clothing within the meaning of § 203(o)."). The unique PPE in this case consists of mesh gloves, arm guards, and knife holders. These items are quite similar to ordinary gloves, sleeves, and belts or holsters. Thus, we conclude that all PPE at issue in this case is clothing under 29 U.S.C. § 203(o).

Plaintiffs make the policy-based argument that including PPE within § 203(o) would create a disincentive for employers or employees to use safety equipment. We fail to see how leaving the compensability of donning and doffing time to the collective bargaining process would have such an effect. Section 203(o)'s application has no bearing on whether PPE is required by law. We join the majority of the circuits that have considered the issue, and hold that "clothes" under 29 U.S.C. § 203(o) includes the PPE worn by plaintiffs in this case.

*Custom or Practice*

The parties disagree as to who bears the burden of proof to establish a custom or practice under § 203(o). We need not decide this issue because Butterball acknowledged before the district court that it had the burden of proof.

18

See Aplt. App., Vol. I at 71 (Butterball's Mot. Summ. J.) ("To prove that § 203(o) applies in this case, Butterball must show that 1) the items at issue are "clothes" and 2) under the governing CBA, there is a 'custom or practice' of nonpayment for donning and doffing of these 'clothes.'" (emphasis added)). Further, who carries the burden of proof here is not dispositive. Assuming Butterball bears the burden of proof, we conclude that it presented sufficient evidence to meet this burden.

The plain language of § 203(o) contemplates that non-payment of donning and doffing time may be an express or implied term of a CBA. A mutually-accepted custom or practice may become an implied CBA term. See Turner, 262 F.3d at 226 ("We view the phrase [custom or practice under a bona fide collective-bargaining agreement] as simply restating the well-established principle of labor law that a particular custom or practice can become an implied term of a labor agreement through a prolonged period of acquiescence."); see also Intermountain Rural Elec. Ass'n v. N.L.R.B., 984 F.2d 1562, 1568 (10th Cir. 1993) ("[A]n uninterrupted and accepted custom may become an implied term and condition of employment by mutual consent of the parties."); Sunoco, Inc. (R&M), 349 N.L.R.B. 240, 244 (2007) ("An employer's practices, even if not required by a [CBA], which are regular and long-standing, rather than random or intermittent, become terms and conditions of unit employees' employment . . . ."). We hold that, where a CBA is silent on the issue and there is no other agreement

19

regarding donning and doffing pay, a custom or practice of non-compensation exists for § 203(o) purposes if there was an established practice of non-compensation prior to the execution of the CBA. See Franklin, 619 F.3d at 617-18 (finding a custom or practice where the employer had not paid donning and doffing time for at least nineteen years and the union knew this); Anderson, 488 F.3d at 958-59 ("[W]e believe that a policy concerning compensation (or noncompensation, as the case may be) for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a 'custom or practice under a bona fide' CBA."). Under such circumstances, union acquiescence can be inferred from acceptance of a CBA that leaves the status quo unchanged.

We have little trouble concluding that a custom or practice of non-payment for donning and doffing time existed in this case. It is undisputed that Butterball has never paid most employees for donning and doffing time,[7] and that plaintiffs knew this. This practice occurred regularly and frequently (in fact, every pay period), such that employees could reasonably expect it to continue. See Sunoco, 349 N.L.R.B. at 244 ("A past practice must occur with such regularity and frequency that employees could reasonably expect the 'practice' to continue or reoccur on a regular and consistent basis."), quoted in UFCW Br. at 7. Plaintiffs

---

[7] The evidence regarding the live hang employees simply shows that there was a different custom or practice for those employees.

20

cannot seriously contend that, at least until the 2005 grievance was filed, there was not a mutually accepted custom or practice of non-compensation.

Plaintiffs argue that the filing of the grievance extinguished any Union acceptance of the custom or practice. Butterball argues that the Union acquiesced because it abandoned or settled the grievance.[8] We conclude that the resolution of the grievance is immaterial because it is undisputed that Butterball and the Union entered into a new CBA in 2008 — after the grievance was filed. Despite the parties' knowledge of the non-compensation practice and the Union's apparent prior dissatisfaction with that practice, the parties did not raise the issue during negotiations or incorporate it into the 2008 CBA. There is no evidence to suggest that the Union and Butterball agreed to defer resolution of the donning and doffing issue when negotiating the 2008 CBA.[9] By failing to negotiate over the pre-existing practice of non-payment under these circumstances, the Union

---

[8] Plaintiffs make the somewhat incomprehensible argument that the failure to arbitrate is meaningless because the grievance was not arbitrable in the first place. See Aplt. Br. at 27. We do not consider this argument because it was raised for the first time on appeal. Tele-Commc'ns, Inc. v. C.I.R., 104 F.3d 1229, 1233 (10th Cir. 1997) ("[W]e should not be considered a 'second shot' forum, a forum where secondary, back-up theories may be mounted for the first time."). For the same reason, we decline to consider plaintiffs' argument that they could not bargain over donning and doffing time because Butterball was required to compensate such time under Colorado law. See Aplt. Br. at 24-25. Further, we reject the premise upon which this argument is based in Part IV, infra.

[9] Further, there is no evidence that the Union was actively pursuing the donning and doffing grievance. This is not a case where, for example, arbitration was ongoing while CBA negotiations were underway.

acquiesced in the continuation of that practice under the new CBA. Contrary to plaintiffs' contention, acquiescence was not a fact issue for the jury in this case because there are no other inferences to be drawn from the undisputed evidence.

Plaintiffs and the UFCW argue that this view of a custom or practice essentially requires unionized employees to "opt in" to statutory rights or "bargain for that which they would otherwise be entitled." See Aplt. Br. at 31, 33; UFCW Br. at 10. This argument ignores the fact that § 203(o) makes donning and doffing time a subject of bargaining, rather than a guaranteed statutory right. The function of § 203(o) is to leave donning and doffing pay to negotiation. Our determination that silence in CBAs coupled with a pre-existing practice amounts to a custom or practice under § 203(o) does not necessarily require unions to "opt in." It requires the party who wishes to change the status quo to have that change memorialized in a CBA, or file a successful grievance. Here, the plaintiffs seek a change from the established practice at the Longmont plant. If, instead, Butterball had previously paid for donning and doffing time, it could not unilaterally change that practice. Additionally, nothing in this opinion prevents the Union from bargaining over donning and doffing pay in the future or filing another grievance. A determination that the Union accepted the practice of non-payment for donning and doffing time does not amount to a finding that the Union waived any statutory rights or any right to negotiate in the future.

We affirm the district court's ruling that donning and doffing the PPE at

22

issue in this case is "changing clothes" and that there was a custom or practice of not compensating that time at the Longmont plant. Thus, donning and doffing time is not "hours worked" pursuant to 29 U.S.C. § 203(o) and Butterball did not violate the FLSA by failing to compensate plaintiffs for donning and doffing time.

*Miscellaneous FLSA issues*

Plaintiffs brought claims not only for pre-and post-shift donning and doffing time, but also for donning and doffing time during their breaks. Section 203(o) applies only to changing clothes that occurs at the beginning and end of the workday and, thus, would not apply to donning and doffing during break time. See Burks v. Equity Gp.-Eufala Div., LLC, 571 F. Supp. 2d 1235, 1247 (M.D. Ala. 2008) (holding that § 203(o) did not apply to donning and doffing during unpaid meal/rest breaks). Section 203(o) also does not apply to sanitizing or walking time. Nonetheless, the magistrate judge recommended granting summary judgment on all of plaintiffs' FLSA claims based on § 203(o). The plaintiffs failed to object to this aspect of the Report and Recommendation and, thus, plaintiffs have forfeited any claims to mid-day donning and doffing, sanitizing, and walking time. See United States v. 2121 E. 30th St., Tulsa, Okla., 73 F.3d 1057, 1060 (10th Cir. 1996) ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

23

IV

Plaintiffs claim that Butterball's failure to compensate donning and doffing time violates Colorado law, specifically Wage Order 27. Wage Order 27 mandates a minimum wage and overtime compensation for hours worked in excess of forty for employees in the retail and service, food and beverage, commercial support service, and health and medical industries. Assuming for the sake of argument that donning and doffing time is "time worked" under Colorado law,[10] we affirm the district court's entry of summary judgment on plaintiffs' Colorado law claim because Butterball is not an employer in the industries covered by Wage Order 27.

Plaintiffs argue that Butterball is subject to Wage Order 27 because it is a food and beverage industry employer. A food and beverage employer is:

> any business or enterprise that prepares and offers for sale, food or beverages for consumption either on or off the premises. Such business or enterprise includes but is not limited to: restaurants, snack bars, drinking establishments, catering services, fast-food businesses, country clubs and any other business or establishment required to have a food or liquor license or permit, and includes any employee who is engaged in the performance of work connected with or incidental to such business or enterprise, including office personnel.

7 Colo. Code Regs. § 1103-1:2. Plaintiffs argue that Butterball fits this definition because it produces food, including RTE turkey products, for consumption.

---

[10] Colorado law does not have a statutory equivalent to 29 U.S.C. § 203(o).

Butterball argues that the definition contemplates retail-type food and beverage enterprises, rather than wholesale or industrial ones.

The interpretation and application of Wage Order 27 is a matter of Colorado law. We apply Colorado rules of construction to determine whether Butterball is a food and beverage industry employer. The primary objective of statutory construction "is to effectuate the intent of the General Assembly by looking to the plain meaning of the language used, considered within the context of the statute as a whole." Bly v. Story, 241 P.3d 529, 533 (Colo. 2010). If the language is ambiguous, Colorado courts look beyond that language "for other evidence of legislative intent and purpose, such as legislative history or other rules of statutory construction." Crandall v. City and Cnty. of Denver, 238 P.3d 659, 662 (Colo. 2010).

Reading the food and beverage industry definition as a whole, it is plain that food and beverage employers are those that sell food directly to the consuming public, rather than for resale. While a wholesale food product manufacturer like Butterball "prepares and offers for sale, food or beverages," it does not prepare or sell those items "for consumption either on or off the premises." Butterball's food products are prepared for eventual consumption (after all, they are food), but they are not sold for consumption.[11] They are sold

---

[11] This is the most plausible explanation for the inclusion of the phrase "for
(continued...)

25

for resale. The examples listed in the second sentence of the definition support this interpretation. A common feature of restaurants, snack bars, and catering services is that they all provide food to the end consumer. In contrast, food manufacturers or producers like Butterball sell products to restaurants and grocery stores.[12] In further contrast to the example establishments, Butterball is not required to maintain a food or beverage license. The Longmont plant is registered as a wholesale food manufacturing and/or storage facility pursuant to Colo. Rev. Stat. § 25-5-426. Aple. Add., Vol. II at 241-42.

Plaintiffs cite to a Colorado Division of Labor 2009 advisory bulletin which states that "a bakery that operates on a retail or wholesale basis and prepares and offers food for sale or consumption on or off its premises is covered by [Wage Order 27]." Aplt. Add. at 18. Plaintiffs argue that the bulletin's inclusion of wholesale bakeries means that Wage Order 27 applies to wholesale food

---

[11](...continued)
consumption." The plaintiffs argue that the phrase excludes food transportation and storage. See Aplt. Br. at 16. However, the word "prepares" would have provided the same limitation because transporters do not prepare food. As plaintiffs point out in their reply brief, "food" is, by definition, intended for consumption. See Aplt. Reply Br. at 1-2 (citing Colo. Rev. Stat. § 25-4-1602). Thus, the "for consumption" language must mean something other than reiterating the definition of food.

[12] The fact that Butterball occasionally sells items produced at the plant directly to employees does not convert Butterball into a retail food establishment. Similarly, the fact that Butterball makes RTE products which require no further preparation before consumption does not convert it into a retail food establishment.

26

manufacturers like Butterball. We find this argument unpersuasive. First, the Division of Labor's fact sheet clearly states that the Wage Order does not apply to "industries such as construction, manufacturing, wholesale." Aple. Add. at 244. While Wage Order 27 might apply to bakeries that do some wholesale business, there is no indication that it applies more generally to all wholesale food producers. Second, the bakery in the advisory bulletin example—whether retail or wholesale—also "prepares and offers food for sale or consumption on or off its premises . . . ." This language mirrors the language in Wage Order 27 itself and suggests that the bakery provides food directly to the consuming public rather than just to distributors.

Plaintiffs also argue that an interpretation limiting food and beverage enterprises to those businesses that sell food products to the ultimate consumer is incorrect because such businesses are already covered by the "retail and service" category in Wage Order 27. See Aplt. Br. at 13. "Retail and service" businesses are those that sell "any service, commodity, article, good, real estate, wares, or merchandise to the consuming public." 7 Colo. Code Regs. §1103-1:2. Even if plaintiffs had made this argument to the district court, we would find it lacked merit. Restaurants and snack bars—which are specifically enumerated as food or beverage employers—also fit the retail and service definition because they sell goods to the consuming public. There is no evidence to suggest that the Colorado Division of Labor intended each industry definition to be mutually exclusive. We

27

affirm the district court's entry of summary judgment on plaintiffs' state law claim because Butterball is not subject to Wage Order 27.

V

The judgment of the district court is AFFIRMED. Plaintiffs' motion to strike, and Butterball's motion to supplement the record, are both DENIED as moot.